IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IVAN GALINDEZ, | § | |
| | § | No.   36, 2019 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID. No.   1712008053 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:  August 21, 2019
Decided:  October 14, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## **O R D E R**

This 14th day of October 2019, upon consideration of the briefs of the parties and the record of the case, it appears that.

1.      The appellant, Ivan Galindez, appeals from a Superior Court jury verdict finding him guilty of Robbery in the First Degree, Assault in the First Degree, two counts of Possession of a Deadly Weapon During the Commission of a Felony, and Criminal Mischief.  He makes two claims on appeal.  First, he contends that the Superior Court abused its discretion by declining to give an eyewitness identification instruction in the form he requested.  Second, he contends that the prosecutor improperly vouched for an eyewitness's credibility in his closing argument.  We reject Galindez's contentions and affirm.

2. On December 12, 2017, at approximately 9:00 p.m., Jorge Luis Franco Martinez was returning to his parked vehicle when a man approached him and asked for money. When Franco Martinez said he did not have any money, the man hit him in the face and head with a metal object (possibly brass knuckles) multiple times, eventually knocking him to the ground. He managed to get up and run back to his car. But after he entered his car, the man punched out the car's window and demanded money while putting a pointed object to his neck. Franco Martinez then turned over his money and the man fled.

3. Franco Martinez and his wife saw the man who robbed him the next day in the same area. The man was dressed the same way, and he laughed at Franco Martinez when he saw him. Franco Martinez (or his wife) used a cellphone to take a picture of the man. They later provided the photograph to the police. Soon thereafter, based on the photo, the police arrested Galindez. He was charged by indictment with the aforementioned crimes.

4. After the police arrested Galindez, Franco Martinez was presented with a six-pack photo array with one of the photos being of Galindez. He immediately marked Galindez' photograph. This photo array was introduced at trial.

5. Sometime later, Franco Martinez was arrested in an unrelated matter and saw Galindez in prison. Galindez laughed at him and said, "It is you. You see how small the world is." Galindez also told him not to testify.

2

6.    At trial Franco Martinez testified to the foregoing, explained that he saw Galindez's face clearly the night of the attack, and identified Galindez in court as his assailant.

7.    An eyewitness to the attack, Ricardo Canongo, also testified at trial. He testified that the man pictured in the photograph taken by Martinez (or his wife) the day after the attack (which had been admitted into evidence) was the man who assaulted and robbed Franco Martinez.[1] He also gave his account of the attack, which was substantially consistent with Franco Martinez's.

8.    In his rebuttal argument, the prosecutor sought to rebut an argument made by Galindez's attorney in his closing that Canongo was not credible because he did not initially give his account of the incident to the police:

> Now, Mr. Canongo told you that he was across the street and he saw this play out. . . . He also said, I didn't tell the police I saw the attack because I was afraid. I have kids and a wife. It's not crazy to think that a man who lives in an area which does have high crime and a man who witnessed an assault, a man who witnessed a robbery doesn't want to come forward and testify but was subpoenaed by our office and was asked and actually directed to come forward and testify and did end up coming forward. And did tell the truth.[2]

---

[1] The prosecutor asked Canongo whether he recognized the defendant and indicated where the defendant was seated. The question drew an objection which was sustained. The prosecutor then moved on to the picture.

[2] Appellant's Opening Br. Ex. B, at 223:10-224:1.

Galindez objected. After a sidebar discussion in which the prosecutor admitted that the last sentence was error, the court struck the prosecutor's final comment and instructed the jurors that it was their "obligation to determine who was and who wasn't telling the truth."[3] Following the court's instruction, the prosecutor apologized to the jury for his comment, reiterated that they as jurors were the sole judges of credibility, and then went on to point out facts that he argued demonstrated Canongo's credibly.

9. At a prayer conference Galindez requested a particular instruction regarding eyewitness identification. His proposed instruction was taken from Massachusetts's model jury instruction on eyewitness identifications, revised in part for the particular evidence admitted at trial. In addition to containing language similar to the Delaware pattern instruction on eyewitness identification, the proposed instruction informed the jury that it should consider a number of things not contained in the Delaware instruction, such as "how good a look did the witness get of the person and for how long?" and "how good was the witness's eyesight?"[4] The court declined to give the requested instruction:

> I think our eyewitness identification instruction is, although not as detailed, and [the requested instruction] is clearly detailed, I think it gives the jury enough for them to make a decision without directing them where to look and . . . it[] seems like we're commenting too much on the

---

[3] *Id.* at 225:2-3, 224-25.
[4] A41(a).

facts and, in my view, taking away the province of the jury to be free to consider all factors in an identification.[5]

The court gave an instruction for eyewitness identifications that tracked essentially verbatim the Delaware pattern instruction:

> An issue in this case is the identification of the defendant. To find the defendant guilty, you must be satisfied beyond a reasonable doubt that the defendant has been accurately identified, that the wrongful conduct charged in this case actually took place, and that the defendant was in fact the person who committed the act. If there's any reasonable doubt about the identification of the defendant, you must give the defendant the benefit of such doubt and find the defendant not guilty.[6]

10.  When a trial court declines a party's request that a jury instruction include specific language or take a specific form, that refusal is reviewed for an abuse of discretion.[7]  Although a defendant has an unqualified right to have the jury instructed with a correct statement of the substance of the law, a defendant is not entitled to a particular jury instruction.[8]  "This Court will not reverse a trial court's jury instruction on appeal if the instruction was 'reasonably informative' and not

---

[5] Appellant's Opening Br. Ex. A, at 5:7-14.

[6] A95.

[7] *Hankins v. State*, 976 A.2d 839, 840 (Del. 2009) (citing *Wright v. State*, 953 A.2d 144, 148 (Del. 2008) (en banc)).

[8] *Goode v. State*, 190 A.3d 996, 2018 WL 3323644, at *3 (Del. July 5, 2018) (Table).

5

misleading when 'judged by common practices and standards of verbal communication.'"[9]

11.    Galindez's claim of error regarding the eyewitness identification instruction fails for the reasons given by this Court in our decision in *Goode v. State*.[10]  In that case, Goode's trial counsel requested an eyewitness instruction substantially similar to the one requested here by Galindez.  The Superior Court denied his request and gave the standard Delaware eyewitness instruction.[11]  On appeal of the Superior Court's denial of Goode's motion for postconviction relief, we held that the defendant's appellate counsel was not ineffective for failing to challenge on direct appeal the Superior Court's denial of his requested eyewitness instruction "because the underlying issue had no merit."[12]  In concluding that "[a]ny challenge to the Superior Court's instruction on appeal would have been rejected," we explained that "the Superior Court's instruction on eyewitness identification was a correct statement of the law, was reasonably informative, and was not

---

[9] *Id.* (quoting *Phillips v. State*, 154 A.3d 1146, 1160 (Del. 2017) (en banc)).
[10] *Id.*
[11] *Id.* at *2.
[12] *Id.* at *3.

6

misleading."[13] For these same reasons, there was no error in rejecting the alternative instruction requested by Galindez.

12. We review Galindez's second claim, alleged prosecutorial misconduct, for harmless error because defense counsel raised a timely and pertinent objection to the misconduct at trial.[14] In its brief the State acknowledges that "at the time of the objection, the prosecutor had not tied his remark to the evidence," and the remark "standing alone, can be construed as improper vouching."[15] Therefore, we will consider the three factors set forth in *Hughes v. State* to determine whether the remark prejudiced the defendant's substantive rights such that a new trial is warranted.[16] These factors include "(1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error."[17] The factors are not conjunctive, do not have the same impact in every case, and must be applied in a case-by-case, fact sensitive manner.[18] We will address the factors in reverse order.

---

[13] *Id.* (footnote omitted).
[14] *Baker v. State*, 906 A.2d 139, 148 (Del. 2006) (en banc).
[15] Appellee's Answering Br. At 24-25.
[16] 437 A.2d 559, 571 (Del. 1981).
[17] *Baker*, 906 A.2d at 149 (citing *Hughes*, 437 A.2d at 571).
[18] *Id.*

13. An appropriate curative instruction was given. Curative instructions are presumed to be followed,[19] and Galindez presents no evidence or argument suggesting that the jury did not follow the instruction. Although the prosecutor's remark arguably went to a central issue in the case—the identity of the assailant—Canongo did not actually identify Galindez in court. The in-court identification of Galindez was supplied by Franco Martinez, and his account of the attack, plus his identification of Galindez, was corroborated by Canongo. Finally, this was not a close case. The remark did not directly relate to the credibility of Franco Martinez's identification. Under the circumstances present here, Franco Martinez's identification was reliable: he clearly saw his attacker; he saw him the very next day in the same area, wearing the same clothing; he immediately picked him out of a photo array; and he saw him again in prison, where Galindez made incriminating

---

[19] *Justice v. State*, 847 A.2d 1097, 1100-01 (Del. 2008); *see also Edwards v. State*, 320 A.2d 701, 703 (Del. 1974) ("[E]ven where error is committed, ordinarily it will be cured by the trial judge's striking of the offending testimony and admonition to the jury to disregard it.").

statements, including telling him not to testify at trial. Any impropriety in the prosecutor's remark, if any, was harmless.[20]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[20] In deciding the case, we have assumed for the sake of argument that the prosecutor's concluding sentence quoted above in paragraph 8 could be seen as vouching. Read in fair context with the preceding sentences, it seems more reasonable that the prosecutor was finishing an appropriate line of rebuttal argument, and that in the difficult, high-pressure situation of speaking to a jury, finished his perfectly proper rebuttal in an awkward way. Galindez's entire argument focuses on the last sentence and fails to acknowledge that the last sentence simply finished the prosecutor's rebuttal argument as to why it would be reasonable for the jury, based on the context, to conclude itself that although the witness had not come forward immediately, he nonetheless told the truth on the stand. That argument was a proper response to Galindez's own argument to the contrary. Nonetheless, we have accepted as a starting point for our analysis that the sentence in isolation can be read as Galindez suggests and conclude that the sentence did not prejudice Galindez.